566 A.2d 1274

**QUAD ASSOCIATES, Appellant,**

v.

**BLAIR COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Commonwealth Court of Pennsylvania.

Dec. 1, 1989.

Crumlish, Jr., President Judge, concurred and filed opinion.

M. David Halpern, Jubelirer, Carothers, Krier & Halpern, Altoona, for appellant.

Merle K. Evey, Evey, Routch, Black, Dorezas, Magee & Andrews, Hollidaysburg, for appellee.

Before CRUMLISH, Jr., President Judge, and CRAIG, DOYLE, BARRY, PALLADINO, McGINLEY and SMITH, JJ.

## OPINION

BARRY, Judge.

Quad Associates (Quad) appeals an order of the Court of Common Pleas of Blair County [1] dismissing its motion for post-trial relief. For the reasons which follow we affirm.

Quad is the assessed owner of improved real estate in the Township of Logan, Blair County. Blair County assessed the property at $1.26 million for 1987. Quad filed a timely tax assessment appeal with Blair County Board of Assessment Appeals (Board) which refused to reduce the assessment. Quad appealed the order of the Board to the trial court pursuant to Section 704 of The Fourth to Eighth Class County Assessment Law (Law), Act of May 21, 1943, P.L. 571, as amended, 72 P.S. § 5453.704.

Following a hearing the trial court issued an order dated March 8, 1988 with an accompanying opinion dismissing Quad's appeal but directing the County's assessor to adjust the assessment for 1987 to reflect the proper common level ratio. In its opinion the trial judge noted that no briefs were filed or received.

1. Senior Judge Eugene A. Creany, specially presiding.

Following its receipt of the trial court's order Quad contacted the trial judge and advised him that, in fact, briefs had been filed. The trial judge advised Quad to file a motion for post-trial relief and that argument would be held on the motion at which Quad could present its position.[2] Quad filed the motion on March 18, 1988. Argument on the motion was held on April 20, 1988, and was followed by the trial court's order of June 3, 1988. Quad appealed this order.

On January 30, 1989, this Court issued an order directing the parties to file supplemental briefs addressing the question of the timeliness of Quad's appeal. Briefs were filed, the case was argued and is now ready for disposition.

In *Ciaffoni v. Washington County Board for Assessment of Appeals*, 112 Pa.Commonwealth Ct. 135, 535 A.2d 247 (1987) this court quashed as untimely an appeal taken from an order of a trial court. The trial court's order was dated January 9, 1986. Motions for post-trial relief were filed and subsequently disposed of on April 18, 1986. The taxing authorities filed appeals following the disposition of the post-trial motions more than thirty days after the trial court's order of January 9, 1986. This Court quashed the appeals on the basis that post-trial motions filed pursuant to Pa.R.C.P. No. 227.1 are inapplicable to statutory appeals unless specifically made applicable by statute or local rule.[3] The filing of post-trial motions did not toll the running of the appeal period. The appeal should have been filed within thirty days of the January 9, 1986 order and accordingly was quashed as untimely filed. *CNG Coal Company v. Greene County Board of Assessment and Revision of Taxes*, 121 Pa.Commonwealth Ct. 443, 551 A.2d 328 (1988); *Westinghouse Electric Corp. v. Board of Property Assess-*

2. By order dated April 25, 1989, this Court denied Quad's motion to supplement the record with an affidavit executed by the trial judge setting forth this fact.

3. The Law does not provide for the filing of motions for post-trial relief and Quad has not argued that a local court rule makes such motions applicable to statutory appeals such as this. Accordingly, we will continue our consideration of this case on the basis that post-trial motions are inapplicable.

*ment, Appeals & Review,* 118 Pa.Commonwealth Ct. 152, 544 A.2d 1088 (1988); *In re: Salem Crossroads Historical Society,* 106 Pa.Commonwealth Ct. 452, 526 A.2d 1257 (1987); *Appeal of Sgro,* 67 Pa.Commonwealth Ct. 304, 447 A.2d 325 (1982). As this appeal was not filed within thirty days of the March 8, 1988 final order, it normally would be quashed.

We are concerned, however, that appellant's dilemna was caused because he filed post-verdict motions after being directed to do so by the trial court. Appellant's problem was exacerbated by the reliance of appellant's counsel on the case of *Hollidaysburg Manor Associates v. Blair County Board of Assessment,* 26 Pa.Commonwealth Ct. 628, 364 A.2d 959 (1976). Appellant's counsel was also one of the counsel in that case. Our Court in *Hollidaysburg Manor* upheld the filing of exceptions in that assessment appeal as a practice that promotes judicial efficiency which should be encouraged. Although this decision is eminently sensible it is inconsistent with our later cases and is hereby overruled. While post-verdict motions cannot be filed in these cases, we recognize the problem presented when appellant was directed to file such motions. The order of the trial court under these circumstances must be considered a breakdown in the operation of the court which warrants our hearing this appeal nunc pro tunc. *Center Township v. Center Township Zoning Hearing Board,* 104 Pa.Commonwealth Ct. 487, 522 A.2d 673 (1987).

We, accordingly, proceed to address the merits of the case. Quad raises two issues for our review. Our scope of review is limited to a determination of whether the trial court abused its discretion, committed an error of law, or whether its decision is supported by the evidence. We must determine whether the assessment, as determined by the fair market value of the property, is based on a proper foundation, and whether the ratio of assessment to fair market value is uniform within its class of real estate. *Appeal of Avco Corporation,* 100 Pa.Commonwealth Ct.

616, 515 A.2d 335 (1986). Sections 704(b) and (c) of the Law provide:

(b) In any appeal of an assessment the court shall make the following determinations:

(1) The market value as of the date such appeal was filed before the board of assessment appeal. In the event subsequent years have been made a part of the appeal, the court shall determine the respective market value for each such year.

(2) The common level ratio which was applicable in the original appeal to the board. In the event subsequent years have been made a part of the appeal, the court shall determine the respective common level ratio for each year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

(c) The court, after determining the market value of the property pursuant to subsection (b)(1), shall then apply the established predetermined ratio to such value unless the corresponding common level ratio determined pursuant to subsection (b)(2) varies by more than fifteen per centum (15%) from the established predetermined ratio, in which case the court shall apply the respective common level ratio to the corresponding market value of the property.

Quad argues first, that the trial court erred in accepting the Board's determination of the property's fair market value. The county assessor had determined that the property had a fair market value of $4,200,000.00. The value was calculated based upon the consideration recited in a deed conveying a ¾ interest in the property to Quad. Section 602(a) of the Law provides in pertinent part:

(a) It shall be the duty of the chief assessor to rate and value all subjects and objects of local taxation ... In arriving at actual value the county may utilize the current market value or it may adopt a base year market value. In arriving at such value, the price at which any property may actually have been sold either in the base year or in

the current taxable year shall be considered, but shall not be controlling. Instead, such selling price estimated or actual shall be subject to revision by increase or decrease to accomplish equalization with other similar property within the county. In arriving at the actual value, all three methods: namely, cost (reproduction or replacement, as applicable, less depreciation and all forms of obsolescence), comparable sales and income approaches, *must be considered* in conjunction with one another. (Emphasis added.)

We do not agree that the trial court's acceptance of the county assessor's reliance on the consideration stated in the deed was an error *per se.* In *Avco* this Court determined that Section 602(a) requires only that the three delineated methods of determining market value be considered not utilized. *See also CNG Coal.* Our review of the record demonstrates that all three methods were considered by the assessor. Further, his testimony before the trial court, together with the testimony of Quad's expert, provided the trial court with an analysis of each of the methods. The trial court's rejection of the methods set forth in Section 602(a) in favor of the utilization of the consideration stated in the deed to Quad was not an abuse of discretion. As such, we cannot reverse that determination. *In re: Appeal of Josten's, Inc.,* 97 Pa.Commonwealth Ct. 106, 508 A.2d 1319 (1986) *petition for allowance of appeal granted,* 514 Pa. 650, 524 A.2d 496 (1987) (findings of trial court in tax assessment cases must be given great weight and cannot be disturbed unless clear error appears).

Second, Quad argues that the Board has not met its burden of presenting evidence outside of its assessment to rebut its presentation of evidence and therefore, requires that Quad's evidence must be accepted. We disagree.

Our Supreme Court outlined the respective burdens of the parties to a tax assessment appeal before a trial court in *Deitch Company v. Board of Property Assessment,* 417 Pa. 213, 209 A.2d 397 (1965).

The procedure requires that the taxing authority first present its assessment record into evidence. Such presentation makes out a prima facie case for the validity of the assessment in the sense that it fixes the time when the burden of coming forward with evidence shifts to the taxpayer. If the taxpayer fails to respond with credible, relevant evidence, then the taxing body prevails. But once the taxpayer produced sufficient proof to overcome its initially allotted status, the prima facie significance of the Board's assessment figure has served its procedural purpose, and its value as an evidentiary device is ended. Thereafter, such record, of itself, loses the weight previously accorded to it and may not then influence the court's determination of the assessment's correctness. *Of course, the taxpayer still carries the burden of persuading the court of the merits of his appeal,* but that burden is not increased by the presence of the assessment record in evidence.

*Id.,* 417 Pa. at 221–22, 209 A.2d at 402 (emphasis added).

Quad's argument ignores the fact that a taxpayer may satisfy its burden of presentation without meeting its burden of persuasion. In the case before us Quad presented the testimony of an expert witness as evidence of the fair market value of the property. The only finding made by the trial court with respect to the evidence presented by Quad states, "Testimony presented by appellant does not support a change in the market value, particularly as the ¾ interest as stated in the deed, is the best evidence of the market value under the circumstances of this case." Finding of Fact 10. The trial court did not make any findings that the evidence presented by Quad was credible or relevant. To the contrary the trial court determined that Quad's evidence did not support its position with respect to the market value of the property. Despite Quad's protestations to the contrary a taxing authority may prevail before a trial court on an appeal from an assessment by simply presenting its assessment records. As the Supreme Court cautioned in *Deitch,* however, "The taxing authority cannot

... rely solely on its assessment record in the face of countervailing evidence unless it is willing to run the risk of having the owner's proof believed by the court." *Id.*, 417 Pa. at 222, 209 A.2d at 402.

We cannot conclude that the trial court erred in determining the market value of Quad's property.

In accordance with the above, the trial court order is affirmed.

## ORDER

NOW, December 1, 1989, the order of the Court of Common Pleas of Blair County at No. 2225 C.P. 1986, dated June 3, 1988, is affirmed.

CRUMLISH, Jr., President Judge, concurring.

I concur in the majority opinion, but I disagree with its characterization of the trial judge's actions as the type of error warranting nunc pro tunc appeal.

The rule recognizing "breakdown in the operations of the court," as grounds for allowing nunc pro tunc appeal, was intended to apply to fraud or *administrative* errors by court officers—for example, a prothonotary's failure to mail notice of entry of an order to a party. *See Nixon v. Nixon,* 329 Pa. 256, 198 A. 154 (1938). Here, the trial judge's act of advising Quad to move for post-trial relief does not fall within this category.

To characterize the trial judge's direction as a "breakdown in the operation of the court" is a dangerous and unwarranted expansion of the original intent of the rule. *Nixon.*