575 A.2d 550

In re Appeal of the BOROUGH OF CHURCHILL and the Churchill Area School District (now known as Woodland Hills School District) From the Action of the Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, on Property Situate in the Borough of Churchill and Owned by Westinghouse Electric Corporation.

Appeal of WESTINGHOUSE ELECTRIC CORPORATION. (Two Cases)

In re Appeal of WESTINGHOUSE ELECTRIC CORPORATION from Assessment by the Board of Property Assessment, Appeals and Review of Allegheny County upon Real Property Located in the Borough of Churchill, Pennsylvania, Block and Lot No. 370–N–350 Known as the Research and Development Center of Westinghouse Electric Corporation.

Supreme Court of Pennsylvania.

Argued March 9, 1990.

Decided May 23, 1990.

Philip Baskin, Marvin A. Fein, Dusty L. Elias Kirk, Baskin Flaherty Elliott & Mannino, P.C., Pittsburgh, for appellant.

Robert W. Goehring, Goehring & West, Sol., Borough of Churchill, Thomas M. Rutter, Jr., Goehring, Rutter & Boehm, Sol., Patrick J. Clair, Woodland Hills School Dist., Patrick J. Loughney, Asst. Legal Counsel, Sol., Bd. of Property Assessment, Appeals and Review, Ira Weiss, Asst. Sol., Pittsburgh, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

These are two appeals of Westinghouse Electric Corporation (Appellant) from the orders of the Commonwealth Court quashing the appeals lodged before that court from the Order of the Court of Common Pleas of Allegheny County denying post-trial relief. 118 Pa.Cmwlth. 152, 544 A.2d 1088.

Appellant is the owner of the Westinghouse Electric Corporation Research and Development Center, located in the Borough of Churchill. The Board of Property Assessment Appeals and Review of Allegheny County established Fair Market Values for Appellant's property for tax years 1977–86 which were appealed to the court of common pleas of Allegheny County by the taxing bodies and the Appellant as provided by the General County Assessment Law Act of

May 22, 1933, P.L. 853, as amended, 72 P.S. Section 5020–518.1.

Twelve days of hearings were held before the Honorable Emil E. Narick, former Administrative Judge of the Civil Division, who, on September 24, 1986, and September 30, 1986, issued oral opinions setting forth his findings of fact and conclusions of law and setting the fair market value for the subject property for the tax years in question. Judge Narick also advised the parties that he would issue a written order and file same with the Prothonotary's office and that when the parties filed the transcript with the court they could appeal or file exceptions.

In compliance with the judge's instructions, exceptions were filed by Appellant on October 9, 1986, from the court's oral orders, although a written order was not issued by Judge Narick until October 14, 1986 and not docketed in the Prothonotary's office until October 15, 1986. Exceptions were filed to the docketed order by the Borough of Churchill and the School District of Woodland Hills on October 23, 1986, and all the exceptions were considered by the trial court and dismissed by its order of October 31, 1986.

Appeals to the Commonwealth Court were filed by Appellant on November 13, 1986, from the October 31, 1986 dismissal order of the trial court and the taxing bodies filed their notice of appeal to the Commonwealth Court from the October 31, 1986, order on November 26, 1986. The Commonwealth Court quashed all appeals on July 25, 1988, *sua sponte*, as untimely because the appeals were not taken from the order of the trial court docketed October 15, 1986, but rather, were taken from the order of October 31, 1986, dismissing the exceptions. In the Commonwealth Court's view, exceptions do not lie in tax assessment cases, because the General County Assessment Law does not call for them, nor do our Rules of Civil Procedure apply to such cases and, finally, because no local rule governs this practice. Given this interpretation, the Commonwealth Court concluded that the order dismissing the exceptions was a nullity and any appeal taken from this order was also a nullity.

■ We have granted allocatur in these cases to determine whether exceptions lie in tax assessment cases and, more importantly, to clear up the confusion that clearly exists among our various judicial districts regarding this practice.

Our research indicates that over eighty years ago we spoke on the subject of exceptions in assessment cases in *Lehigh and Wilkes-Barre Coal Company's Assessment Appeal*, 225 Pa. 272, 74 A. 65 (1909), where we remanded the case to the trial court to consider exceptions which had been filed and not considered. This procedure was reaffirmed in *Thompson's Appeal*, 271 Pa. 225, 114 A. 774 (1921), where we explained that the practice of filing exceptions in tax assessment appeals was based, in part, as a method to point out mistakes of law or fact to the hearing judge or the full court sitting en banc, and to give the reviewing authority an opportunity to correct those mistakes, before an appeal was lodged. We next had occasion to comment on this practice in the *Chester Holding Corp. Appeal*, 390 Pa. 152, 134 A.2d 668 (1957), where we endorsed, once again, our expectation that exceptions were permitted in tax assessment cases and further held that whether one judge (the hearing judge) or the full court disposed of the exceptions was a matter of convenience and practice, left to the discretion of each trial court.

In compliance with these holdings, our Commonwealth Court enforced the practice of allowing exceptions to be filed in tax assessment appeals in *Hollidaysburg Manor Associates v. Blair County Board of Assessment*, 26 Pa. Commonwealth Ct. 628, 364 A.2d 959 (1976), and in that case remanded the matter to the trial court to dispose of the exceptions that had been filed but not considered by the trial court.

This practice continued until *Ciaffoni v. Washington County Board for Assessment of Appeals*, 112 Pa.Commonwealth Ct. 135, 535 A.2d 247 (1987), where the Commonwealth Court quashed an appeal filed to it from the denial of "post-trial relief," under the theory that such relief,

permitted by our Rules of Civil Procedure 227.1, is inapplicable to tax assessment appeals unless specifically permitted by the statute which creates the right of appeal or local rule. The Court dismissed the *Ciaffoni* appeal as untimely and applied that reasoning to dismiss appeals to it in *CNG Coal Company v. Greene County Board of Assessment and Revision of Taxes*, 121 Pa.Commonwealth Ct. 443, 551 A.2d 328 (1988), and these appeals. (It is interesting to note that in both cases the Commonwealth Court addressed and resolved the merits in recognition of the possibility that it erred in dismissing the appeals on jurisdictional grounds.)

In *Quad Associates v. Blair County Board of Assessment Appeals*, 130 Pa.Commonwealth Ct. 62, 566 A.2d 1274 (1989), the Commonwealth Court noted that its current interpretation was inconsistent with its own precedent in *Hollidaysburg Manor* and even noted that the practice of filing exceptions was "eminently sensible" yet felt bound to follow its later line of cases and held *Hollidaysburg Manor* to be overruled. In spite of this holding, however, the Commonwealth Court reached the merits in *Quad Associates* because the exceptions in that case were invited by the trial court, which action was considered to be a breakdown in the operation of the court warranting hearing the appeal on a nunc pro tunc basis.

Appellant forcefully argues that the recent line of Commonwealth Court holdings, beginning with *Ciaffoni* and ending with *Quad Associates* are aberrations and totally inconsistent with our prior holdings in this area of the law and, therefore, must be reversed. We agree.

The filing of exceptions in tax assessment cases has been an important part of our practice and procedure, as clearly defined in our prior cases, and that when exceptions have been submitted and not disposed of by the trial court, we have not hesitated in remanding to the trial court for consideration and disposition of exceptions in order that the court below may do its full duty in the consideration of the case. *Lehigh and Wilkes–Barre.*

Our Commonwealth Court recognized that we endorsed this practice in *Hollidaysburg Manor* and continued to do so until its decision in *Ciaffoni* where, unfortunately, they felt more honor bound to follow their precedents than ours. Our review of these later cases reveals that they turn on an analysis of whether the Rules of Civil Procedure are applicable and if they are not, then "post-trial" relief, pursuant to Pa. Rule of Civil Procedure 227.1, is unavailable to a party, and that, therefore, exceptions cannot be filed in such cases.

Our difficulty with this analysis is that even if we assume that we have never made the Rules of Civil Procedure applicable in tax assessment appeals, why does that mean that exceptions, whether they are designated as such or misnamed as something else, cannot be filed with a court when eighty years of precedent approves of this practice?

The simple answer is that if the Rules of Civil Procedure do not apply to tax assessment appeals, then the former accepted practice acknowledged by this Court is still the rule, and if no precedent exists on the subject, then the practice is left to the discretion of the trial court, which always has the right to regulate the practice and procedure before it.

Our Rules of Civil Procedure are applicable to all actions which were formally asserted in assumpsit or trespass and other forms of action where we incorporate the rules by reference. Pa.R.C.P. 1001. In addition to assumpsit and trespass, we have made the rules applicable to actions in Ejectment (see Rule 1051), actions to Quiet Title (see Rule 1061), Actions in Replevin (see Rule 1071), actions in Mandamus (see Rule 1091), Actions in Quo Warranto, (see Rule 1111), Actions in Mortgage Foreclosure (see Rule 1141), Actions upon Ground Rent (see Rule 1161), actions in Foreign Attachment (see Rule 1251), actions in Fraudulent Debtor's Attachment (see Rule 1285), actions in Compulsory Arbitration (see Rule 1301), actions in Equity (see Rule 1501), actions in Partition of Real Property (see Rule 1551), actions to Prevent Waste (see Rule 1577), actions for De-

claratory Relief (see Rule 1601), actions upon a Mechanic's Lien (see Rule 1651), Class Actions (see Rule 1701), and actions for Support (see Rule 1910.1).

We have also incorporated the rules by reference in Appeals from decisions of Health Care Service Malpractice Arbitration Panels (see Rule 1801), actions pursuant to the Protection from Abuse Act (see Rule 1905), actions for Custody, Partial Custody and Visitation of Minor Children (see Rule 1915.1), actions in Divorce or Annulment (see Rule 1920.1), actions to confess Money Judgments (see Rule 2951), actions to Confess Judgment for Possession of Real Property (see Rule 2970), Statutory Actions to Conform Confessed Judgments (see Rule 2981), and in Writs of Execution (see Rule 3102). In each of these areas, we have specifically designated what rules of procedure apply, and to what extent the "civil action" or special rules, govern.

In those special actions where we have not incorporated the rules by reference, they cannot be mandatorily imposed upon the trial courts or parties who litigate such matters. Such is the case with tax assessment appeals and more generally, with all statutory appeals, and to this extent our Commonwealth Court's conclusion that the rules of Civil Procedure are inapplicable is correct, albeit for a different reason.

We have reviewed the various theories advanced in the Commonwealth Court's recent opinions which attempt to instruct the bar on why the Rules of Civil Procedure do not apply in statutory appeals. Prominent is a discussion that, as far as exceptions are concerned, when draped in the mantle of a "post-trial motion," they cannot be permitted since a statutory appeal entitles a party to a "hearing" and not a "trial," and the Rules of Civil Procedure do not encompass hearings. It is, therefore, argued that where no local rule or statute endorses the post-trial motion practice in "hearing" situations, there is a lacuna which the local court is powerless to fill. *Shaw v. Commonwealth, Department of Transportation, Bureau of Driver Licensing,* 122 Pa.Commonwealth Ct. 636, 553 A.2d 108 (1989);

*Schreiber v. Tax Claim Bureau of Butler County,* 117 Pa.Commonwealth Ct. 588, 545 A.2d 950 (1988); *Schuylkill County Tax Claim Bureau v. Tremont Township,* 104 Pa.Commonwealth Ct. 338, 522 A.2d 102 (1987); *Commonwealth, Pennsylvania Liquor Control Board v. Willow Grove Veterans Home Association,* 97 Pa.Commonwealth Ct. 391, 509 A.2d 958 (1986).

This reasoning is unacceptable for a number of reasons. First, we are not convinced that there is much of a difference between a hearing and a trial. Evidence is presented in both proceedings and questions of law are determined. Parties are required to prove facts and to establish that they have been aggrieved and that the law gives them a remedy. To that extent we believe that any difference between a trial and a hearing is illusory and, if statutory appeals are not governed by the Rules of Civil Procedure, it is because, as we have already indicated, we have not incorporated those rules to these actions by reference as we have in so many other areas of the law.

█ Having established that the Rules of Civil Procedure are inapplicable, we are also not convinced that the alternative remedy offered by the Commonwealth Court in its cases is correct or broad enough. We are told that if the Rules are not applicable they can be made so statutorily, but we know of no authority by which the Legislature can prescribe procedure in our courts under our Constitution. Article V, Section 10(c) of our Constitution specifically vests such authority in this Court. It is true that the Legislature can, and often does, enact statutes which give litigants a right of appeal; it can designate what court can hear a case, the scope of review on appeal, the time periods for taking an appeal, and in many cases whether the right to jury trial shall be extended. But we know of no authority which would vest power in the Legislature to tell the Judiciary how to hear and dispose of a case and even if the Legislature commanded the courts to permit the filing of exceptions, we believe that such an order would be violative of

the separation of powers and would be null and void. *In re 42 Pa.C.S. Section 1703*, 482 Pa. 522, 394 A.2d 444 (1978).

■ We do agree that our trial courts have had the ability to enact local rules to adopt a post-trial motion practice, so long as they were not in derogation of our statewide rules, but our Commonwealth Court has assumed that they must do so in accord with the provisions of our Rules of Civil Procedure (see Rule 239), but has overlooked the fact that this Rule applies to civil practice and procedure in areas which have been made subject to the general rules of Civil Procedure (see Rules 239, 250 and Rule 1001).

Since the Rules of Civil Procedure are inapplicable to statutory appeals, rules of practice and procedure did not have to be enacted in strict compliance with the provisions of Rule 239. Rather, our trial courts have had the right to enact rules and publish these to cover practice in this area of the law. Where they have not created and published such local rules, then each trial court has been vested with the full authority of the court to make rules of practice for the proper disposition of cases before them and that we have enforced those rules unless they violated the Constitution or laws of the Commonwealth or United States, or our state-wide rules. The general, inherent power of all courts to regulate their own practice, without control, on the ground of expediency, has been recognized by this court for almost one hundred and eighty years, (see *Mylin's Estate,* 7 Watts 64 (1838); *Vanatta v. Anderson,* 3 Binney 417 (1811)), and we see no reason at this time to disturb that well-settled principle.

Permitting or refusing to accept exceptions is as much within the trial court's discretion as is the right to ask counsel to submit a brief covering a particular question of law. No rules govern this practice, but we know that where the trial court asks for such help, the bar is quick to respond to assist the bench in disposing of the case at hand.

We believe that the fatal flaw in dealing with this area of practice has been that the Commonwealth Court has at-

tempted to bring this very diverse, specialized practice into some measure of uniformity, without looking back at our precedents and by overlooking that the trial courts are still empowered to regulate practice and procedure before them when a void exists. We also glean a willingness on the part of our brethren to seize the technical designation of "post-trial relief" as a weapon to impale innocent members of the bar who have resorted to that designation when they really meant to file "exceptions," and we are disappointed that the court has not been willing to look behind the technical designation to see the filing for what the parties and the trial court understood it to be.

In this case, the trial court invited the parties to file exceptions and accepted them and disposed of them, and then issued its final order. This practice was not in violation of our case law or state-wide rules. Our precedents have recognized the practice of inviting exceptions in tax assessment cases, and it is interesting to note that we have never imposed this step on the trial courts but have merely recognized that if they feel that such a practice is beneficial to them, who are we to interfere with the trial court's regulation of the practice before it.

As we noted long ago, one of the reasons for "exceptions" is to point out mistakes of fact or law, and to give the hearing judge an opportunity to correct them before an appeal is lodged. *Thompson's Appeal*, 271 Pa. 225, 114 A. 774 (1921). We reaffirm the right of the trial court to regulate the practice before it by permitting or refusing to permit exceptions in tax assessment appeals and in general over all statutory appeals,[1] whether designated as "exceptions" or as "post-trial relief."

1. We are aware that in some of our judicial districts summary conviction cases governed by our Rules of Criminal Procedure are included for statistical reasons in the statutory appeal inventory. This has caused confusion as to which rules of procedure apply. The post-verdict procedure affirmed in this opinion does not apply to summary conviction cases. See Comment to Rule 1123 of the Pa. Rules of Criminal Procedure.

■ Until and unless we promulgate specific Rules to incorporate these actions into our Civil Rules as we have in the Comment to Rule 1123 of Criminal Procedure or as we have in Appeals from Decisions of Health Care Service Malpractice Arbitration Panels (see Rule 1801), or Actions pursuant to the Protection from Abuse Act (see Rule 1901), the decision of whether exceptions lie in statutory appeals is one for the trial court to make, which is in the best position to determine how such a practice will affect its court calendar, or whether it will be of benefit to have an opportunity to correct any errors prior to the taking of an appeal.

Where the trial court is willing to accept post-trial motions or exceptions, its decision to do so is final, especially where our cases have approved of this practice in the past. If we become convinced that this practice is no longer needed or is impractical or, for any reason, undesirable, then we will put a stop to it.

■ In this case, since the trial court invited exceptions, its order of October 9, 1986, was not final and did not trigger an appeal; rather, the order of October 31, 1986, which denied post-trial relief, was the final order that disposed of the case and therefore, was appealable. Appellants' appeals to the Commonwealth Court were timely and the Commonwealth Court was in error to dismiss the appeals without reaching the merits. Accordingly, we reverse and remand to the Commonwealth Court for consideration of these appeals on the merits.

McDERMOTT, J., did not participate in the consideration or decision of this matter.

NIX, C.J., concurs in the result.

ZAPPALA, J., files a concurring and dissenting opinion.

ZAPPALA, Justice, concurring and dissenting.

I concur with the majority's decision to reverse and remand this matter to the Commonwealth Court for consid-

eration of the merits of this appeal because the Appellant should not be penalized for proceeding in accordance with the trial court's instructions concerning the procedure for review of a decision in tax assessment cases. Rather than leaving it to an individual trial judge's discretion as to whether the filing of exceptions in statutory appeals will be permitted, however, I would hold that the procedure of filing exceptions does not apply to those appeals. This would ensure that the practice is uniform throughout the Commonwealth and would avoid the confusion that we were attempting to resolve.

I am not persuaded that our prior decisions in *Lehigh and Wilkes–Barre Coal Company's Assessment Appeal,* 225 Pa. 272, 74 A. 65 (1909), *Thompson's Appeal,* 271 Pa. 225, 114 A. 774 (1921), and *Chester Holding Corp. Appeal,* 390 Pa. 152, 134 A.2d 668 (1957) are of any precedential value in deciding the issue of whether exceptions may be filed in assessment cases. In *Lehigh,* the issue was whether the lower court, sitting en banc, had erred in refusing to consider the exceptions filed from the trial's court's decision. The en banc court had refused to hear the exceptions on the ground that there had been no valid trial or proceeding by the board of revision. The dispute centered only on the deficiencies in the proceeding before review was sought in common pleas court. The en banc court had concluded that the assessment and records in the office of the county commissioners were so irregular that an appeal would not lie to the common pleas court. We held that the appeal in the proceeding was taken properly and that the lower court had a duty to review the issues raised. The question of the proper procedure in the appeal before the common please court was not in issue.

In *Thompson's Appeal,* an appeal was taken from the board of revision's tax valuations to the court of common pleas. It was the practice for the entire court of three judges to hear all of the cases. After all of the evidence was submitted, one of the judges was designated as a reviewing judge to analyze the evidence and make findings

of fact. The reviewing judge did so and nisi decrees were then filed. Exceptions were filed to the three judge court, a majority of which disagreed with the findings of the reviewing judge. The unsuccessful party then argued on appeal that the reviewing judge's findings should be treated as though made by a master or auditor, and should not be set aside unless obvious error was committed or where the entire evidence preponderated against such finding. It was in this context that we addressed the purpose of filing exceptions from the reviewing judge's decision to the court sitting en banc. The issue we resolved in that case was the proper scope of review of the decision of a majority of judges sitting en banc, all of whom had heard the evidence and participated in the hearing, after action was taken by the reviewing judge. Again, the issue of the proper procedure for taking an appeal from the common pleas court decision in tax assessment cases was not raised. ·

Finally, in *Chester Holding Corporation Appeal,* the issue raised was whether a real estate assessment appeal to the common pleas court could properly be heard by a single judge. We found that the appellant's contention that an order entered by a single judge who heard the assessment appeal was not a final order was without merit.

The issue presented in this case was not addressed by this Court in the three cases relied upon by the majority. Although the lower courts have spoken on this issue, this case presents us with our first opportunity to squarely resolve the issue. I believe the better approach would be to establish one procedure, rather than to defer to a trial judge's discretion. This would eliminate the unfairness inherent in a procedure that treats litigants differently depending upon the judge who is assigned to hear the matter. Even through the elimination of the exceptions procedure, a trial judge would still have the authority to entertain a petition for reconsideration to correct any errors in the proceeding or in his decision.