632 A.2d 994

**Louis SHAPIRO and Leo Stepanian, Appellants,**

v.

**CENTER TOWNSHIP, BUTLER COUNTY.**

Commonwealth Court of Pennsylvania.

Argued June 16, 1993.

Decided Oct. 13, 1993.

84

Leo M. Stepanian, for appellants.

Charles F. Flach, III, for appellee.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

Louis Shapiro and Leo Stepanian (landowners) appeal from an order of the Court of Common Pleas of Butler County (trial court) relating to liens imposed on their property by Center Township (Township) arising from municipal claims based on two assessments for water lines abutting their property. This appeal is taken from an order on post-trial motions that the trial court entered after the appeal period ran following the original order.

The subject property is approximately seventeen acres bounded on the north by Holyoke Road and on west by Sunset Drive. A separate, unrelated property occupies the corner where these streets intersect. In 1983 the Township purchased all the assets of a private water company that served the Northvue Plan located north of Holyoke and incorporated them into the Township's water system. Part of the purchase included an eight-inch water line along Sunset Drive, which ran from the south, turned right on Holyoke and connected to another line serving the Northvue Plan. The developer of the Northvue Plan chose not to install an expensive eight-inch connection and water meter; instead, he spanned the gap with a section of one-and-one-half-inch pipe, which provided all of the supply to an eight-inch line going north. Complaints concerning the private company's prices and water pressure led to the 1983 purchase. The landowners did not seek to connect to the water line at the time of purchase because their property is undeveloped.

In 1988 the Township replaced the existing line along Holyoke with an eight-inch water main and extended that line to the east to connect to a different source. It connected this new line with the eight-inch line at the corner of Sunset Drive (thereby reversing the flow so that it now runs from north to south below Holyoke) and also extended the new line along Sunset Drive to the north of Holyoke Road. In 1989 the Township adopted a resolution assessing properties by the front-foot rule along Sunset Drive for the cost of the acquisition of that line in 1983. At the same time the Township adopted a similar resolution assessing properties along Ho-

lyoke Road for the cost of acquisition and of the 1988 construction. For the subject property, the assessments were for 826.76 feet along Sunset Drive at $4.11 per foot, a total of $3,398.00, and for 492.80 feet along Holyoke Road at $11.26 per foot, a total of $5,548.93.

The Township filed municipal claims for the assessments, which, by statute, became liens against the property upon filing. Section 3(a) of the Act of May 16, 1923, P.L. 207, *as amended* (Act), 53 P.S. § 7106(a). The landowners did not pay the assessments, and the Township then praecipied for writs of scire facias sur municipal claim and sought to prosecute the liens to judgment. The landowners filed affidavits of defense to the writs of scire facias and sought to strike the liens. *See* Section 14 of the Act, 53 P.S. § 7182. Following a hearing, in an opinion and order dated June 20, 1991, the trial court rejected the defenses raised by the landowners and denied their motions to strike the liens, with the exception of that portion of the claim associated with costs of construction of the line along Sunset Drive to the north of Holyoke Road, which the court ordered deducted from the assessment. Both the landowners and the Township filed motions for post-trial relief pursuant to Pa.R.C.P. No. 227.1. By order of July 9, 1991, the trial court scheduled oral argument on the post-trial motions for September. After oral argument the trial court denied the motions on November 4, 1991, and reaffirmed the previous order. The landowners filed an appeal to this court on December 6, 1991.[1]

On December 19, 1989, the Supreme Court adopted an amendment to Pa.R.C.P. No. 227.1, relating to post-trial relief, effective January 1, 1990, which added subsection (g): "A motion for post-trial relief may not be filed in an appeal from the final adjudication or determination of a local agency or a Commonwealth agency as to which jurisdiction is vested in the

---

1. The Township also appealed at No. 2694 C.D.1991; however, it did not comply with a court order to pay the filing fee, and its appeal was dismissed by order of November 13, 1991.

courts of common pleas."[2] Therefore, if the scire facias proceeding is a statutory appeal subject to Rule 227.1(g), then the appeal to this court from the denial of the motion for post-trial relief was not timely. Following oral argument on the merits of the challenge to the assessments before a panel, we directed that the case be argued before the court en banc to address (1) whether the appeal to this court was timely, and, in regard to that issue, (2) whether the Rules of Civil Procedure are applicable and (3) whether the proceeding in the trial court was a statutory appeal governed by Pa.R.C.P. No. 227.1.

In supplemental briefs, the landowners argue that the proceeding before the court of common pleas was a "non-jury trial" and a "civil action" originally commenced in the trial court within the meaning of the Rules. They assert that the post-trial motions were properly filed under Rule 227.1 because such motions have replaced the procedure for filing exceptions following the decision of a judge without a jury. *See* "Note" following Rule 227.1(a). The Township contends that proceedings on a scire facias sur municipal claim are most like those under the Eminent Domain Code, to which the Rules of Civil Procedure do not apply, and that this was a "statutory appeal," and post-trial motions are inappropriate.

 In Pennsylvania a writ of scire facias is purely statutory.[3] Procedures under Chapter 25, "Municipal Claims

**2.** The Explanatory Comment—1989 states that new subdivision (g) is added to the rule specifying the procedure in appeals from final determinations of certain government agencies because the Commonwealth Court has stated that there are no post-trial proceedings in 'statutory appeal' proceedings unless mandated by local rule, and this practice has caused confusion in several respects. "New subdivision (g) prohibits post-trial proceedings in a statutory appeal. The decision of the court in all such cases will be a final, appealable order."

**3.** A writ of scire facias is a mandate to the sheriff, which recites the occasion upon which it issues, which directs the sheriff to make known to the parties named in the writ that they must appear before the court on a given day, and which requires the defendant to appear and show cause why the plaintiff should not be permitted to take some step, usually to have advantage of a public record. The object of the writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution.

and Tax Liens," of Title 53 of Purdon's Pennsylvania Statutes, 53 P.S. §§ 7101–7505, are unusual in several respects. First, Section 3(a) of the Act, 53 P.S. § 7106(a), declares that all lawfully assessed or imposed municipal "claims" are "liens" upon the property that arise when lawfully imposed and assessed. The assessment and imposition of the lien occur without any form of hearing. A scire facias proceeding is an action in rem, but the imposition of a new lien upon property obviously has a significant effect on the property rights of the owner.[4] The definition of "Adjudication" provided in 2 Pa.C.S. § 101 for purposes of that title is, "Any final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties in which the adjudication is made."[5]

 If the owner does not dispute the claim and assessment, the owner simply pays and removes the lien. If the owner does dispute the claim, the Act provides no mechanism for a direct "appeal." Instead, to contest the claim or amount of assessment and to force the issue to an original hearing, the owner may file and serve a notice upon the claimant municipality to issue a scire facias.[6] In the proceeding commenced

> The writ of scire facias serves the dual purposes of a summons and a complaint, and a writ of scire facias is personal process, but the detailed requirements of a pleading are not applied to the writ of scire facias.
> 18 Standard Pennsylvania Practice 2d § 102:10 (1983) (footnotes omitted). Where the writ applies to a judicial record it does not serve to institute an action but is founded on an action and is termed a judicial writ. *Id.* § 102:11.

**4.** Section 3(c) of the Act, 53 P.S. § 7106(c), provides, "A writ of execution may issue directly without prosecution to judgment of a writ of scire facias." In addition to remedies provided by law for the filing of liens for the collection of municipal claims municipalities may seek the recovery and collection of such a claim by an action in assumpsit against those who owned the property at the time of the completion of the improvement, within six years of the completion. Section 1 of the Act of April 17, 1929, P.L. 527, *as amended*, 53 P.S. § 7251.

**5.** Title 2 of the Pennsylvania Consolidated Statutes relates to administrative law and procedure for both Commonwealth agencies and local agencies.

**6.** Section 16 of the Act, 53 P.S. § 7184, provides in part:

by the writ of scire facias, the owner then files an "affidavit of defense." In that affidavit the owner may raise all defenses that he or she has to the municipal claim. *LCN Real Estate, Inc. v. Borough of Wyoming*, 117 Pa.Commonwealth Ct. 260, 544 A.2d 1053 (1988).[7] Alternatively, the municipality may pursue a writ of scire facias without waiting for prompting from the owner, which is what occurred in the present case.[8] Either way, there is no requirement that the owner "appeal" within a specified period from the initial filing of the municipal claim or forever forego the right to challenge it.[9]

> Any party named as a defendant in the claim filed, or admitted to defend there against, may file, as of course, and serve a notice upon the claimant or upon counsel of record to issue a scire facias thereon, within fifteen days after notice so to do. If no scire facias be issued within fifteen days after the affidavit of service of notice is filed of record, the claim shall be stricken off by the court, upon motion. By contrast, although municipal claims may be filed to recover taxes, *see* Section 4 of the Act, 53 P.S. § 7107, procedures for taking "appeals" from real estate tax assessments are provided in The General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–1 through 5020–602. *See Chartiers Valley School District v. Virginia Mansions Apartments, Inc.*, 340 Pa.Superior Ct. 285, 489 A.2d 1381 (1985).

7. Section 14 of the Act, 53 P.S. § 7182. This section also provides for a defendant to pay the claimant or pay into the court or to enter security for so much of the claim as is not contested. The imposition of statutory liens for assessments under Pennsylvania law without first providing a hearing to the affected owner was upheld against a constitutional due process challenge, in part of the basis of the procedure for filing an affidavit of defense, in *Sager v. Burgess*, 350 F.Supp. 1310 (E.D.Pa.1972), *summarily aff'd*, 411 U.S. 941, 93 S.Ct. 1923, 36 L.Ed.2d 406 (1973). *See also Winpenny v. Krotow*, 574 F.2d 176 (3d Cir.1978) (constitutional challenge to imposition of lien under Pennsylvania law through filing of municipal claim without a pre-filing hearing is controlled by Supreme Court's summary affirmance in *Sager*).

8. A third alternative is another procedurally unusual feature of enforcement of municipal claims. Both sides may choose to do nothing. In that case the lien for services or construction simply remains recorded against the property indefinitely, subject only to a requirement that a suggestion of nonpayment and an averment of default be issued to revive the lien within each period of twenty years following the date on which the claim was filed. Section 15 of the Act, 53 P.S. § 7183.

9. The opportunity for the lien simply to remain recorded indefinitely enables the claimant municipality at its option to wait for payment. This scheme likely explains the lack of a requirement for the owner to pursue an immediate appeal from the municipal action in imposing the

■ Therefore, the precise effect of the procedure renders the proceeding in common pleas court the owner's "appeal" even though the municipality is the moving party. Regardless of which party seeks the writ of scire facias to force the matter to a hearing, the owner's initial refusal to pay and subsequent filing of an affidavit of defense constitute an "appeal" from the local agency adjudication of the imposition of the lien. Jurisdiction of this appeal from an adjudication of a local agency is vested by statute in the court of common pleas, and the matter is a statutory appeal within the meaning of Rule 227.1.

However, another general principle applicable to certain post-trial proceedings in courts of common pleas is set forth by the Supreme Court in *Appeal of Borough of Churchill,* 525 Pa. 80, 575 A.2d 550 (1990), a case involving a real estate tax assessment appeal. In *Borough of Churchill* the trial court had issued oral findings and conclusions setting the fair market value of the property, to be followed by a written opinion and order, and informed counsel that after filing of the transcript they could appeal or file exceptions. The parties filed exceptions and briefs. The court considered those and then issued an order dismissing the exceptions, from which the landowner appealed. This court quashed the appeal as untimely, citing our precedent that post-trial proceedings are not permitted in statutory appeals, which proceedings are not governed by the Rules of Civil Procedure. The Supreme Court reversed.

■ The Supreme Court noted that historically the practice had been to permit the filing of exceptions in tax assessment appeals. The Court observed that the Rules of Civil

lien. *See* Township Exhibit No. 5, Letter from Center Township Solicitors of February 14, 1989, accompanying the bills for assessments; Supplemental Reproduced Record 14b:

The current policy of the Board is not to require you to tap onto the line and not to undertake enforcement action for collection of the assessment. The assessment must be paid whenever the property benefited utilizes the water service, at which time the assessment plus the then-current tap-in fee must be paid in full. The assessment must be paid in full if the property is sold or otherwise transferred in whole or in part.

Procedure apply to actions formerly asserted in assumpsit or trespass and to those actions where the Court has incorporated the Rules by reference, providing a listing of such actions, which does not include actions on municipal claims.[10] The Court held that where the Rules do not apply, they cannot be imposed on the trial courts. Where the question is not provided for by statute or by local rule, the trial court possesses the inherent discretion to regulate practice and procedure before it and the authority to invite the filing of exceptions or post-trial motions and to rule on them. Because the Rules of Civil Procedure are not applicable to statutory appeals, local rules of practice and procedure on the topic of exceptions in such cases do not have to be adopted in strict compliance with the statewide Rules, as is otherwise required by Rule 239. Further:

> Where [trial courts] have not created and published such local rules, then each trial court has been vested with the full authority of the court to make rules of practice for the proper disposition of cases before them. . . .
>
> . . . .
>
> In this case, the trial court invited the parties to file exceptions and accepted them and disposed of them, and then issued its final order. This practice was not in violation of our case law or state-wide rules. . . .
>
> . . . We reaffirm the right of the trial court to regulate the practice before it by permitting or refusing to permit exceptions in tax assessment appeals and in general over all

**10.** In the chapter of the Rules of Civil Procedure on "Depositions and Discovery," Pa.R.C.P. No. 4001 provides in part: "(a)(1) The rules *of this chapter* apply to any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules including any action pursuant to the Eminent Domain Code of 1964 or *the Municipal Claims Act of 1923.*" (Emphasis added.) The Rules of Civil Procedure do not apply in Eminent Domain Code proceedings. *Department of Transportation v. Hess,* 55 Pa.Commonwealth Ct. 27, 423 A.2d 434 (1980). The express application of the Rules relating to depositions and discovery to eminent domain and municipal claims proceedings indicates that the Rules are not generally applicable to such proceedings.

statutory appeals, whether designated as 'exceptions' or as 'post-trial relief.'

*Borough of Churchill*, 525 Pa. at 89–90, 575 A.2d at 554–55.

In *Eachus v. Chester County Tax Claim Bureau*, 148 Pa. Commonwealth Ct. 625, 612 A.2d 586 (1992), this court considered Rule 227.1(g) and the decision in *Borough of Churchill*. *Eachus* involved a trial court order overturning a tax sale of property, where the parties filed post-trial motions. After the appeal period ran, the trial court issued an order striking all post-trial motions as inappropriate, and the successful bidder appealed.

In *Eachus* this court reconciled *Borough of Churchill* with Rule 227.1(g) by noting that the Supreme Court focused on the authority of a trial court to "invite" post-trial motions or exceptions. We concluded that in statutory appeals, where both the Rules of Civil Procedure and local rules are silent as to the right to file post-trial motions, none may be filed unless the court explicitly directs otherwise. In that case, because post-trial motions were not invited, the trial court's original order was final when entered. *Eachus*, 148 Pa.Commonwealth Ct. at 633, 612 A.2d at 591.

In view of all of the above, we conclude that in the present case the proceeding in common pleas court on the writ of scire facias was a statutory appeal or, in any event, was a proceeding to which the Rules of Civil Procedure do not apply. Under Rule 227.1(g) the post-trial motions technically were not proper, and the trial court did not have to consider them. However, the circumstances of this case are closer to those of *Borough of Churchill* than to those of *Eachus*. The trial court did everything but expressly invite and direct the parties to file post-trial motions. When the parties filed their motions the court promptly scheduled argument on them. Under *Borough of Churchill,* this is within the trial court's inherent power where the local rules do not provide otherwise.[11] Accordingly, the final appealable order was the trial court's order

11. The Township has referred us to no local rule that addresses the filing of exceptions or post-trial motions.

disposing of post-trial motions, and the appeal to this court was timely.[12]

■ Turning to the merits of the case, we note that the landowners have preserved two of the seven arguments they made before the trial court. First they assert that the original purchase of the line along Sunset Drive and Holyoke Road in 1983 benefited the property at that time by providing the potential to tap in to that existing line. The landowners maintain that there was no benefit to the property resulting from the 1988 construction because the property already was served by the water lines purchased in 1983, citing *Vendetti Appeal,* 181 Pa.Superior Ct. 214, 219, 124 A.2d 448, 450 (1956):

> The general principle of law is that when a work of local public utility, such as a highway, a water main or a sewer has once been constructed, either by the public or at the expense of abutting owners, the latter cannot be charged with the cost of any reconstruction or change, even if there is a further benefit. *Philadelphia v. Meighan,* 27 Pa.Superior Ct. 160 [ (1905) ].

12. A trial court's inviting or permitting exceptions or post-trial motions under *Borough of Churchill* should not be confused with practice regarding petitions for reconsideration pursuant to Pa.R.A.P. 1701(b)(3), relating to the authority of a trial court or agency after an appeal. Such a petition is filed *after* the final appealable order, and it does not toll the running of the appeal period. Rule 1701(b)(3)(ii) specifies that to grant such a petition a court must enter "an order *expressly granting reconsideration* ... within the time prescribed by these rules for the filing of a notice of appeal...." (Emphasis added.) An order staying all proceedings or merely setting a date for argument on the petition is not sufficient. *Schoff v. Richter,* 386 Pa.Superior Ct. 289, 562 A.2d 912 (1989). Where a post-trial motion is required by Rule 227.1 or invited or accepted in accordance with *Borough of Churchill,* there is no final appealable order until the court disposes of the post-trial motion. *See Borough of Churchill,* 525 Pa. at 93, 575 A.2d at 556 (Zappala, J., concurring and dissenting): "I believe the better approach would be to establish one procedure, rather than to defer to a trial judge's discretion.... Even through the elimination of the exceptions procedure, a trial judge would still have the authority to entertain a petition for reconsideration to correct any errors in the proceeding or in his decision." We therefore disapprove the statement in *Department of Transportation v. Axsom,* 143 Pa.Commonwealth Ct. 99, 598 A.2d 616 (1991), that an improvidently filed post-trial motion will be treated as a petition for reconsideration.

As the Township points out, the trial court's ruling is not inconsistent with this principle. The trial court emphasized that Section 4 of the Act, 53 P.S. § 7107, requires that a property be benefited by an acquisition before it may be assessed. The question is whether this property was benefited by the purchase of the line in 1983. Despite the landowners' assertions, Thomas Quinlan (Quinlan), the Operations Manager of the Township's Water Department, testified and explained that the line along Sunset Drive and Holyoke Road served the plan to the north and was not capable of serving the owners along Sunset Drive and Holyoke Road as well. That was why those owners were not assessed at that time. If the owners had sought to tap in then, the Township's hand would have been forced, and the Township would have had to do what it ultimately did in 1988.

The Township did grant special permission to one owner immediately south of the landowners on Sunset Drive to tap in to serve one house, and he was assessed at the rate of $4.11 per foot, but other owners along the existing line south of Holyoke Road were not permitted to tap in and were not assessed. The trial court found this to be the case. *See* Trial Court Opinion of November 4, 1991, slip op. at 2–3. Quinlan's testimony provides ample support for the trial court's finding. An appellate court must uphold the findings of the trial court if they are adequately supported by competent evidence. *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). The trial court correctly concluded that the landowners' property was benefited by the Sunset Drive water line when the Township permitted tap-in to that line in 1988, and it was benefited by a line along Holyoke Road when the new line capable of serving the property was constructed there in 1988.

Second, the landowners assert that the 1983 purchase was made with general Township funds, and hence could not be assessed against abutting owners. As the trial court explained, the theory behind this principle is that if property owners pay taxes into the general fund from which a purchase

is made, and then pay an assessment, they pay twice. The landowners offered in evidence the minutes of the meeting of the supervisors of August 3, 1983, approving the issuance of a general obligation note for the purchase of the private water company. However, the trial court found based on Quinlan's testimony that the note was issued solely to secure the purchase (which was not paid with cash but rather through installments over ten years) and that the purchase price was paid from the Township Water Fund. Those funds derive solely from Water Department operations; they include no tax money, and they are segregated from other Township funds. Again this finding is amply supported and may not be disturbed on appeal.

Accordingly, the order of the trial court of November 4, 1991, denying motions for post-trial relief from the order of June 20, 1991, is affirmed.

## ORDER

AND NOW, this 13th day of October, 1993, the order of the Court of Common Pleas of Butler County at A.D. No. 89–625 and A.D. No. 89–626, dated November 4, 1991, denying post-trial motions and reaffirming the order of June 20, 1991, is affirmed.

CRAIG, President Judge, concurring.

Procedural confusion will be the result of labeling this type of case as an *appeal by a landowner* to the trial court when in fact the *township* filed this execution suit in court *against the landowner*, who, by law, answered and defended it.

The opinion in support of judgment of the court rightly exercises our jurisdiction, and, in accordance with a sound analysis of the merits, properly affirms the trial court's confirmation of the major portion of the municipal claims upon which the township has sued.

But where (1) the township initiated this action as a civil execution suit, (2) the landowner answered it as a civil execution suit, and (3) the parties tried it de novo as a civil

execution suit, without any agency hearing or any "adjudication . . . of a local agency" which could be a subject for appeal, this court should not relabel this proceeding as an appeal for the purpose of ruling out the post-trial motions under the aegis of Pa.R.C.P. No. 227.1(g), prohibiting post-trial motions only in "an appeal from the final adjudication or determination of a local agency"—not in a case like this.

This action is not an appeal, but rather a civil action in which post-trial motions can be filed under Pa.R.C.P. No. 227.1. This scire facias under the Municipal Claims Act of May 16, 1923, P.L. 207, §§ 3(a), 14, 53 P.S. §§ 7106(a), 7182, *as amended,* is included as a "civil action or proceeding at law" expressly subject to the Pa. Rules of Civil Procedure for the purpose of depositions and discovery, Pa.R.C.P. No. 4001(a)(1), as the opinion supporting the judgment forthrightly acknowledges.

Even though this civil execution suit—which culminated in the trial court's order of June 20, 1991 confirming the assessments—is based upon statutory law, that does not mean that it is a statutory *appeal.* Virtually all of Pennsylvania's procedural remedies today are based upon statutes such as the Judicial Code [1] and upon procedural rules rather than upon common law foundations.

Because the trial court here did not review or rehear any local tribunal's findings adopted pursuant to a local agency hearing, but conducted its own non-jury trial, the post-trial motions pursued by the parties and the court would seem eminently reasonable and proper.

However, if there may be some policy reason against giving a trial court the opportunity to double-check the basis for its non-jury judgment in a matter such as this, or if Pa.R.C.P. No. 227.1(g) suffers from ambiguity, then this court should leave to the Supreme Court its prerogative of (1) expressly prohibiting post-trial proceedings in civil execution suits, or (2) going beyond the rule's prohibition of such review in statutory

1. 42 Pa.C.S. §§ 101–9781.

appeals, to add a new prohibition in cases such as this, where the municipality is the suitor and not the appellee.

Our procedural hurdles and mazes provide enough traps for the wary, as well as the unwary, without this court adding to the complications which confront the bar and the public, by our *sua sponte* conclusion that the township, by filing its action, was initiating an "appeal" from its own assessment.

FRIEDMAN, J., joins with this concurring opinion.

KELLEY, Judge, concurring and dissenting.

I concur with the majority in the reasoning and determination to the issue of timeliness.

I respectfully dissent from the majority in the determination of the merits.

The water line that was purchased by Center Township (Township) was prior to the purchase, a public utility, as testified by Thomas Quinlan.

At the very least, therefore, the properties there were benefited by the existence of a public utility water line prior to purchase by the Township. This benefit was continual and ongoing through the purchase by the Township until 1988, when the replacement of the water line took place.

I believe, at the very most, the "beneficial value" which inured to the appellants' property by the replacement would be the difference of the benefit between the prior one-and-one-half-inch and the eight-inch replacement line, if any, as supported by competent evidence.

I believe that the appellants' property having been benefited by the existence of the public utility water line is total and complete once as it was installed in the street in front of the property of the appellants, either predating the Township's acquisition, or at the latest upon the Township's purchase in 1983.

I would, therefore, remand for taking of testimony on the differential benefit between that rendered by the prior one-and-one-half-inch line as opposed to the eight-inch line, if any.