## PENNSYLVANIA INDEPENDENT WASTE HAULERS ASSOCIATION

v.

## TOWNSHIP OF LOWER MERION, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided March 21, 2005.

Reargument En Banc Denied May 17, 2005.

D. Barry Pritchard, Jr., Norristown, for appellant.

Anthony J. Mazullo, Jr., Doylestown, for appellee.

BEFORE: LEADBETTER, J., and LEAVITT, J., and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

The Township of Lower Merion (Township) appeals from the order of the Court of Common Pleas of Montgomery County (trial court) entering declaratory judgment in favor of the Pennsylvania Independent Waste Hauler's Association (Association)[1], and declaring that the Township was without authority, under the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101)[2] and the Waste Transportation Safety Act (Act 90)[3], to enforce the licensing and inspection provisions of Sections 82–8.1[4], 82–11[5], 82–12[6] and 82–13[7] of the Code of the Township of Lower Merion (Code). We affirm in part, and reverse in part.

The Township began regulating refuse collection prior to 1981. In 1998, the Township enacted amendments to its Code which included the licensing and inspection of waste trucks and containers. Pursuant to the amendments, in 2004 the Township

1. The Association is composed of a number of small, independently owned commercial waste haulers that conduct business in several municipalities in Pennsylvania including the Township.

2. Act of July 28, 1988, P.L. 556, *as amended*, 53 P.S. §§ 4000.101–4000.1904.

3. 27 Pa.C.S. §§ 6201–6209.

4. Section 82–8.1 of the Code provides, in pertinent part:

No person shall operate as a collector within the [Township] without first having registered as such for the current calendar year with the [Township's] Director of Health. Each registered collector will be entitled to a permit for each truck operated in the township and container placed in the township for use by a customer to deposit waste for collection. The fee for each permit shall be as set forth in the Township Schedule of Fees.... No truck shall be operated for the collection of waste and no container shall be placed for the collection of waste within the township unless each such truck and each such container prominently displays the permit issued by the township. The Township reserves the right not to issue or, if issued, to revoke a permit for every truck whose condition is not in compliance with §§ 82–11 and 82–12 hereof or for a container whose condition is not in compliance with § 82–13 hereof. Application for a permit shall be made upon a form supplied by the Township. Permits shall be issued by the [Township's] Director of Health when the collector has complied with all of the provisions of this chapter and paid the prescribed permit fee....

5. Section 82–11 of the Code provides:

All vehicles used for collecting garbage and/or refuse shall be:
A. Totally and permanently enclosed and of welded steel construction.
B. Provided with a means of loading only at the top, side or rear end, depending upon the design of the enclosed body.
C. So constructed that once garbage and/or refuse has been loaded it cannot be reworked, sorted, handled or removed from the body other than by dumping the load.
D. So constructed that no garbage and/or refuse can be carried at any place on the vehicle other than in the enclosed body.
E. So equipped that all loading or unloading openings on the body have adequate tightly fitted doors or covers with latches or clamps to keep them closed and rubber or other suitable gaskets to render them leakproof, spillproof and dustproof.

6. Section 82–12 of the Code provides:

All vehicles used for collecting rendering material shall be:
A. Constructed of welded steel.
B. So constructed that the body is easily cleanable and designed to prevent the leakage and spillage of the contents.
C. Provided with a cover except when materials are transported in leakproof containers with tight-fitting lids.

7. Section 82–13 of the Code provides:

All collectors who furnish garbage and/or refuse containers to their customers shall furnish and maintain all such containers in leakproof condition and with operable lids which, when closed, shall effectively prevent the escape of noxious odors, effluent, refuse and garbage and which, when closed, shall effectively prevent the entry of vermin and vectors into such containers....

inspected approximately 1,500 waste containers. The Township collected a $25.00 fee for each waste container permit, and a $10.00 fee per year for recycling containers.

On January 30, 2001, the Association filed an action for declaratory judgment in the trial court. In its complaint, the Association alleged, *inter alia*, that pursuant to Section 303(a) of Act 101[8], Montgomery County (County) had the authority to issue permits and regulate the processing and disposal of the municipal waste generated within its boundaries. In addition, pursuant to Section 303(d) of Act 101[9], the County had delegated this authority to the Waste System Authority of Eastern Montgomery County (Authority).[10] Pursuant to the delegation of these powers, the Authority had established a license fee for commercial waste haulers who operate in the County. As a result, the Association alleged that the Township was without the authority to enforce the licensing and inspection provisions of the Code with respect to the waste trucks and containers in the Township.

Accordingly, the Association asked the trial court to enter an order declaring, *inter alia*, that: (1) the Township is without authority to require the licensing and inspection of waste trucks and containers in the Township; (2) the provisions of the Code authorizing the licensing and inspection of waste trucks and containers are invalid; (3) the Township is prohibited from enforcing these Code provisions; (4) the Township pay reasonable counsel fees and costs; (5) the Township reimburse the haulers any license fees, fines and costs incurred as a result of the enforcement of these provisions of the Code; and (6) such other relief that the court may deem appropriate. On April 17, 2001, the Township filed an answer to the complaint denying all of the material allegations raised therein.

---

8. Section 303 of Act 101 provides, in pertinent part:

   (a) **Primary responsibility of county.—** Each county shall have the power and its duty shall be to insure the availability of adequate permitted processing and disposal capacity for the municipal waste which is generated within its boundaries. As part of this power, a county:
   (1) May require all persons to obtain licenses to collect and transport municipal waste subject to the plan to a municipal waste processing or disposal facility designated pursuant to subsection (e).
   53 P.S. § 4000.303(a)(1).

9. Section 303(d) of Act 101 provides:

   (d) **Delegation of county responsibility.—**A county may enter into a written agreement with another person pursuant to which the person undertakes to fulfill some or all of the county's responsibilities under this act for municipal waste planning and implementation of the approved county plan....
   53 P.S. § 4000.303(d).

10. *See also* Section 304 of Act 101 which provides, in pertinent part:

    (a) **Responsibility of other municipalities.—**Each municipality other than a county shall have the power and its duty shall be to assure the proper and adequate ... collection and storage of municipal waste which is generated or present within its boundaries ... and to adopt and implement programs for the collection and recycling of municipal waste or source-separated recyclable materials as provided in this act.
    (b) **Ordinances.—**
    (1) In carrying out its duties under this section, a municipality other than a county may adopt resolutions, ordinances, regulations and standards for the ... storage and collection of municipal wastes or source-separated recyclable materials, which shall not be less stringent than, and not in violation of or inconsistent with, the provisions and purposes of the Solid Waste Management Act [(SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 53 P.S. §§ 6018.101–6018.1003], [and] this act....
    53 P.S. § 4000.304(a), (b)(1).

On February 9, 2004, a hearing was conducted before the trial court.[11] At the hearing, the Association presented the testimony of Walter Leck, the president of the Association and an employee of George Leck and Son, Inc., a commercial municipal waste hauler. Mr. Leck testified that he was personally aware of the provisions of the Code imposing a license or permit fee for commercial municipal waste haulers operating in the Township, and that the Township enforced the Code against members of the Association. *See* N.T. 2/9/04 at 3–4. Mr. Leck also testified that the County requires a license to operate within the Township. *Id.* at 4.

The Township presented the testimony of John Massa, the Township's Director of Health. *See* N.T. 2/9/04 at 10–29. Mr. Massa testified regarding, and identified photographs depicting, three major health problems with respect to the 1,500 waste containers in the Township: (1) the presence of rats in containers with lids that were either broken or missing; (2) the leakage from containers which were rotted out or which had broken seals; and (3) the leakage from containers which had the drain plugs purposefully removed. *See Id.* at 11–12, 14–20. Mr. Massa stated that leakage from the trucks was also a major health problem. *Id.* at 11. Although the Township had regulated waste collection prior to 1981, the Township enacted the instant Code and enforcement program in response to resident complaints regarding the foregoing problems. *Id.* at 11–12, 15, 17–20. Mr. Massa acknowledged the regulations of the Pennsylvania Department of Environmental Protection (DEP) regarding the condition of containers, and stated that the Township's requirements are based on the statewide requirements. *Id.* at 23–24. However, Mr. Massa stated that the DEP has never conducted any inspections of containers in the private sector. *Id.* at 24.

■ On May 12, 2004, the trial court issued the instant order which, *inter alia,* entered declaratory judgment in favor of the Association, and declared that the Township was without authority, under 101 and Act 90[12], to impose the licensing and inspection requirements, with respect to waste trucks and containers in the Township, as required by the Code. The Township then filed the instant appeal.[13]

■ In this appeal, the Township claims[14] that the trial court erred in granting the Association's request for declaratory relief because although Act 90 prohibits the Township from implementing a licensing and inspection program for garbage and refuse trucks operated in the Township, Act 101 and Act 90 do not preclude the Township from implementing a licens-

---

**11.** *See* Notes of Testimony of the Hearing of February 9, 2004 (N.T. 2/9/04) at 2–31.

**12.** The trial court noted that, during the pendency of the instant litigation, the General Assembly had enacted Act 90. In addition, the trial court noted that Section 6203(c) of Act 90, 27 Pa.C.S. § 6203(c), provides, in pertinent part, that "[n]otwithstanding anything to the contrary in this chapter, the [SWMA] or [Act 101], no county and no municipality may implement a municipal waste or residual waste transportation authorization or licensing program after the effective date of this chapter."

**13.** This Court's scope of review in a declaratory judgment action is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion. *City Council of the City of Reading v. Eppihimer,* 835 A.2d 883 (Pa.Cmwlth.2003).

**14.** In the interest of clarity, we consolidate the claims raised by the Township in this appeal.

ing and inspection program for the garbage and refuse containers located in the Township pursuant to its powers under the First Class Township Code.[15,16]

15. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502. Specifically, Section 1502 of the First Class Township Code provides, in pertinent part:

> In addition to other remedies provided by law, and in order to promote the public health, safety, morals, and the general welfare, to enact and enforce suitable ordinances to govern and regulate the ... maintenance, sanitation, ... drainage, use, and inspection of all buildings and housing, or parts of buildings and housing, ... used, in whole or in part, for human habitation or occupancy, and of the sanitation and inspection of land appurtenant thereto....

53 P.S. § 56519.

> Section 1502 also provides, in pertinent part:
>
> [T]o prohibit accumulation of ... garbage, rubbish and other refuse materials upon private properties including the imposition and collection of reasonable fees and charges for the collection, removal and disposal thereof, and to prescribe fines and penalties for the violation of such regulations....

53 P.S. § 56527. *See also* Section 1502 of the First Class Township Code, 53 P.S. § 56526 ("[T]o make regulations respecting ... drains, dumps, cesspools, and similar conditions, to prohibit and remove any noxious or offensive ... business, or dangerous structure, ... or any other nuisance whatsoever, on public or private grounds, prejudicial to the public health or safety, or to require the removal of the same by the owner or occupier of such grounds...."; Section 1502 of the First Class Township Code, 53 P.S. § 56544 ("To make such regulations as may be deemed necessary for the health, safety, morals, general welfare, cleanliness, beauty, convenience and comfort of the township and the inhabitants thereof."); Section 1601 of the First Class Township Code, 53 P.S. § 56601 ("The administration of the health laws in townships shall be enforced by a board of health, or by a health officer or officers, as the case may be, appointed by the township commissioners...."; Section 1608 of the First Class Township Code, 53 P.S. § 56608 ("The board of health may inspect house drains, waste and soil pipes, cesspools ... and any conditions or places whatsoever, in the township, which may constitute a nuisance or a menace to public health....").

16. In its brief filed in support of these allegations of error, the Township concedes that Section 6203(c) of Act 90 precludes it from continuing to inspect and license the waste hauling trucks operating within its borders. *See* Brief for Appellant at 9, 15–16. However, the Township asserts that this prohibition is limited to waste transportation, and it does not prohibit its inspection and licensing of containers located on private property. *Id.* at 9–11, 15–19. As a result, the Township requests that the offending portions of the Code be severed and that the remaining portions, relating to the licensing and inspection of refuse and waste containers, remain valid and enforceable.

In general, a statute or ordinance may be partially valid and partially invalid, and if the provisions are distinct and not so interwoven as to be inseparable, the courts should sustain the valid portions. *Saulsbury v. Bethlehem Steel Company,* 413 Pa. 316, 320, 321, 196 A.2d 664, 666, 667 (1964). In determining the severability of a statute or ordinance, the legislative intent is of primary significance. *Id.* The legislating body must have intended that the act or ordinance be separable, and the statute or ordinance must be capable of separation in fact. *Id.* Thus, the valid portion of the enactment must be independent and complete within itself. *Id.* *See also* Section 1925 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1925 ("[T]he provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.").

As stated above, Section 82–8.1 provides that no person shall operate as a collector in the Township without first having registered

In contrast, the Association concedes that the First Class Township Code specifically empowers the Township to inspect waste containers located in the Township to protect the health, safety and welfare of its residents. However, the Association contends that there is no provision in the First Class Township Code, Act 101, Act 90, or any other statute, that empowers the Township to charge a fee to waste haulers for such inspections. Thus, although the Township may inspect containers, the Association asserts that there is absolutely no basis in law which permits the Township to charge a license fee for each container to fund the Township Health Department's inspection program.

To the contrary, as noted above, Section 1502 of the First Class Township Code specifically states that the Township is empowered to "[p]rohibit accumulation of ... garbage, rubbish and other refuse materials upon private properties *including the imposition and collection of reasonable fees and charges for the collection ... thereof,* and to prescribe fines and penalties for the violation of such regulations...." 53 P.S. § 56527 (emphasis added). Thus, the First Class Township Code specifically empowers the Township to impose reasonable fees and charges in connection with the waste container inspection program.

In addition, neither Act 101 nor Act 90 prohibit the Township's enactment and enforcement of the waste container inspection program. Rather, as noted above, Section 304(a) of Act 101 specifically provides that "[e]ach municipality other than a county shall have the power and its duty shall be to assure the proper and adequate ... storage of municipal waste which is generated and present within its boundaries...." 53 P.S. § 4000.304(a).

Further, Section 6203(c) of Act 90 provides, in pertinent part, that "[n]o municipality may implement a municipal waste or residual waste transportation authorization or licensing program after the effective date of this chapter." 27 Pa.C.S. § 6203(c). However, Section 6202 of Act 90 defines "transportation" as "[t]he *off-site removal* of municipal and residual waste any time after generation." 27 Pa.

---

as a collector for that year with the Township's Director of Health. Section 82–8.1 also provides that each registered collector is entitled to a permit for each truck and container used in the township. Section 82–8.1 further provides that permits for a truck and a container shall be issued by the Director of Health when the registered collector has complied with all of the provisions of the Code and paid the prescribed fee.

Thus, Section 82–8.1 establishes the method by which a particular waste hauler is certified by the Township, and the process by which the hauler can obtain all of the necessary permits for each of the pieces of equipment that it uses in each transaction retrieving and removing garbage and refuse in the Township. By its plain wording, Section 82–8.1 establishes a licensing system which requires a separate permit for each piece of equipment used by a hauler in each transaction retrieving and removing garbage and refuse. In addition, the separate provisions in Sections 82–11, 82–12 and 82–13 merely outline the standards which the trucks and containers used in the Township must meet. As the Township concedes that the provisions of Sections 82–8.1, 82–11 and 82–12 relating to the licensing and inspection of garbage and refuse trucks are invalid, and as the purportedly valid provisions of Sections 82–8.1 and 82–13 relating to the licensing and inspection of containers are independent and complete apart from the invalid provisions, the purportedly valid provisions of this section can be severed from the admittedly invalid provisions.

Moreover, although the severance issue was not raised by the Township before the trial court, the Association does not argue that this issue has been waived. As a result, the Association has waived any potential waiver of the issue, and the issue may be addressed by this Court. *Musko v. Workers' Compensation Appeal Board (Calgon Carbon Corporation)*, 729 A.2d 657 (Pa.Cmwlth.1999).

C.S. § 6202 (emphasis added). Thus, the prohibition in Section 6203(c) merely relates to the removal of waste, and not the storage of waste prior to its removal as regulated by the Code.

In granting declaratory judgment in this case, the trial court relied upon this Court's opinion in *Kasper Brothers, Inc. v. Falls Township*, 672 A.2d 1386 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 546 Pa. 649, 683 A.2d 886 (1996). In *Kasper Brothers, Inc.*, a "host municipality" of a landfill passed an ordinance imposing a $100.00 licensing fee on each waste hauling vehicle transporting waste through the municipality to the landfill. In affirming the trial court's determination that the fee was illegal, this Court stated the following, in pertinent part:

> The trial court, in a well-reasoned opinion, rejected [the] Township's argument that, as a host municipality, it is authorized to impose this additional licensing fee upon waste haulers' vehicles. Act 101 granted the power to license waste haulers' vehicles to the counties, not to the municipalities. Nowhere in Act 101 is a municipality authorized to license waste haulers' vehicles. The only additional authority Act 101 granted to host municipalities is that found in Section 4000.304(b), *supra*, regarding reasonable ordinances regulating the hours and days vehicles may deliver waste to the landfills.

*Kasper Brothers, Inc.*, 672 A.2d at 1389.

However, in this case the Township concedes that it does not have the authority to inspect and license the waste hauling trucks operating within its borders. In addition, as noted above, Section 1502 of the First Class Township Code and Section 304(a) of Act 101 specifically empower the Township to implement a licensing and inspection program for the garbage and refuse containers located in the Township.

Thus, the provisions of Act 101 and Act 90, and this Court's opinion in *Kasper Brothers, Inc.*, only preclude the Township from inspecting and licensing the waste hauling trucks operating within its borders.

Accordingly, that portion of the trial court's order is affirmed insofar as it declares that the provisions of Sections 82–8.1, 82–11, and 82–12 of the Code authorizing the licensing and inspection of waste hauling trucks are invalid; otherwise the order is reversed.

### ORDER

AND NOW, this 21st day of March, 2005, that portion of the order of the Court of Common Pleas of Montgomery County, dated May 12, 2004 at No. 01–02295, is AFFIRMED insofar as it declares that the provisions of Sections 82–8.1, 82–11, and 82–12 of the Township of Lower Merion Code authorizing the licensing and inspection of waste hauling trucks are invalid; otherwise the order is REVERSED.